IN THE MATTER OF THE APPLICATION OF GEORGE FRY FOR A WRIT OF HABEAS CORPUS.

{ Decided March 3, 1884.
{ The CHIEF JUSTICE and JUSTICES COX and JAMES sitting.

1. Inasmuch as the jurisdiction of the police court to convict an accused of an offence against the criminal laws of the United States, without a trial by jury, has been acquiesced in for nearly fourteen years, this court declines, at this, the first time that the jurisdiction has been formally assailed, to enter upon the examination of the question, but passes the prisoner on to the Supreme Court of the United States, if he should think proper to appeal to that tribunal. At the same time, it is intimated that, if the police court were just entering on its existence, this court would feel bound to consider the question, and would do so, perhaps, with some prepossession against the jurisdiction.

2. Under the act creating the police court, the punishment is the criterion by which the offense is to be considered infamous. Offences which are punishable only by imprisonment in the District jail are, by this act, non-infamous offences, as petit larceny and the receiving of stolen goods amounting to less than $35 in value, are such offences, and they may be prosecuted in the police court by information, without being, on that account, obnoxious to the provision of Article V of the Constitution of the United States, which declares that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury.

3. If distinct offences, although of a similar character, are set forth in several counts in the same indictment, and *a fortiori* if set forth in different indictments or informations, it is in the power of the court to impose cumulative sentences—that is, periods of confinement, each one of which is independent of the other.

4. The prisoner was sentenced upon six separate informations, each one of which set forth the offence of receiving stolen goods. On *habeas corpus*, the petition did not aver more than that the record would show on inspection that there was only one crime committed. It was—

*Held,* that the record did not show anything of that sort, and that the court had no right to assume that the goods set forth in the several informations were feloniously received at one time as stolen goods.

5. A cumulative sentence of imprisonment is sufficiently certain where the imprisonment is made to commence at the expiration of an imprisonment under a previous sentence, the number and date of which is given.

The Case is stated in the opinion.

John E. McNally for petitioner.

A. S. Worthington and Hugh T. Taggart for the United States.

Mr. Justice Cox delivered the opinion of the court.

George Fry made application to Justice Wylie, in the criminal court, for a writ of *habeas corpus* to the warden of the jail, requiring the petitioner to be brought before the court, in order that the legality of his detention there should be inquired into. The application was refused, and an appeal taken to this court and a writ ordered. The petitioner was produced and appeared through counsel. In the petition, he complains that, in the police court, he was tried on six informations, convicted and sentenced by Judge Snell, who was presiding, on each of the six informations, to one hundred and eighty days, or six months, confinement in the jail of the District, each sentence to commence after the ending of the former, making in all about three years. He has already been confined in jail for the period of twelve months.

There were several positions taken in argument, and the first is that the act of Congress, by which the police court was established in 1870 is unconstitutional, so far as it purports to vest in the judge holding that court the right to convict an accused party of an offence against the criminal laws of the United States without a trial by jury. While it is admitted that, in reference to offences which are the creatures of municipal ordinances, the Constitution would not be infringed by the attempt to confer that jurisdiction on the court, the law is supposed to offend against Article three, section two, of the Constitution of the United States which contains the following clause: "The trial of all

*crimes,* except in cases of impeachment, shall be by jury," and Article six of the amendment to that instrument which declares, that "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed."

It will be remembered that the act creating the police court, while it is a virtual authority to the justice presiding over it to try the prisoner, nevertheless gave the prisoner a right of appeal to the Supreme Court of the District, which is untramelled by any conditions at all, and which, when exercised, virtually supersedes the judgment of the police court. It is not denied, in argument, that if the prisoner has his election to be tried by court or jury, the trial by jury is virtually preserved and the right is not infringed. But it is said that he must have the right to be tried in the first instance by a jury, and the language used by Judge Blatchford in the Dana case is cited to the effect that the accused is entitled, not to be first convicted by a court and then to be acquitted by a jury, but to be convicted or acquitted, in the first instance, by a jury.

On the other hand, it is claimed that this untrammelled right of appeal, from the conviction by the police judge, substanstially preserves the right of trial by jury and saves the act of Congress from the offence of violating the Constitution of the United States.

If the police court were just entering upon its existence, we should feel bound to consider this question, and perhaps should consider it with some prepossession in favor of the position taken by the prisoner. But that court has been in existence nearly fourteen years; its jurisdiction has been acquiesced in, and this is the first time that it has been formally assailed before this court. At the same time, it is to be observed that there is a strong array of authority in the State courts, under constitutional provisions similar to that of the Federal Constitution, in support of the position that the right of appeal from a conviction by a justice to another court, with the right of jury trial in the latter, vir-

tually does preserve the right of trial by jury, and that the accused, in that way, has all the benefit that the Constitution intended to confer upon him. We shall, therefore, decline to enter upon the examination of this question at the present time, and pass the prisoner on to the Supreme Court of the United States, if he thinks proper to appeal to that tribunal on this question.

Another question made is, whether the accused could be tried for such an offence as is set forth in these informations, without previous presentment or indictment by a grand jury. Article five of the amendments to the Constitution provides that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, with certain exceptions relating to military offences, either in the army or navy, or in the militia.

Now, whatever the common law may be on this subject, we have held that the act creating the police court makes the punishment of the offence the criterion of its being infamous or not in its character, and that offences which are punishable only by imprisonment in the jail of the District, are to be treated as non-infamous offences, such as petit larceny and the receiving of stolen goods amounting to less than $35 in value. Both those offences are punishable by only six months confinement in the common jail, and we have held that they are properly non-infamous offences, and therefore the provision of the Constitution of the United States would not apply to this class of cases, and we do not feel disposed to reconsider this point.

Another point is, whether the justice below has a right to impose cumulative sentences. Here were six informations and six convictions, and each imprisonment after the first was to commence on the expiration of the preceding one, making altogether about three years. It has been held, and was held particularly in the Tweed case, so well known in New York, that where similar offences are charged in different counts of the indictment, and punished, each one, by confinement in the penitentiary, all the periods of punishment by imprisonment must run concurrently; that it

amounts to only one sentence, no matter how numerous the charges. That is, if a man steals one pair of shoes one day, and the next day another, and a dozen different offences are committed, he cannot be punished by more than one term of imprisonment for the whole, any more than in one case. That doctrine in the Tweed case is repudiated both in England and in this country, by the weight of authority, and we are satisfied that if distinct offences, although of a similar character, are set forth in several counts in the same indictment, and, *a fortiori*, if set forth in different indictments or informations, it is in the power of the court to impose cumulative sentences, that is, periods of confinement, each one of which is independent of the other.

Another question made is, whether the record in these cases discloses more than one crime, and it is claimed that although there were six different informations, yet only one crime has been committed. The petition is a little ambiguous. We do not understand whether it means to allege that only one larceny was committed, or one offence of receiving stolen goods was committed. These are six separate informations. Each one of them sets forth a positive offence of receiving stolen goods. They describe the goods, the different values, and, as far as we can gather from the record, those were distinct offences. We have no right to suspect, much less to assume, that all these goods were feloniously received at one time as stolen goods. The record does not disclose that only one offence was committed, and the petition does not even aver it. It avers simply that the records would show, on inspection, that there was only one crime. But we think the record does not show anything of that sort.

The matter troubling me the most has been the point made as to the uncertainty of the sentence. It is claimed that the sentence is so vague and uncertain, as to the commencement and termination of the confinement of the prisoner, as to be void. For instance, one of the sentences, number 23,939, I think, is for receiving stolen property, and the record shows the sentence to be, that the prisoner should

be imprisoned one hundred and eighty days in jail, the sen-tence to take effect upon the expiration of an imprisonment under sentence in case number 22,937 of the same date—that is, of January 3d, 1884. The proposition maintained is, that the sentence on its face ought to show the exact length of imprisonment without compelling the prisoner, or anyone else, to resort to other records to find out when the imprisonment commences and terminates, and that if it does not, it is void. Two cases have been cited upon this question; one in 18 Ohio State Reports, and the other in 22 Ohio State Reports. In the first case, however, the sentence was to take effect at the expiration of the sentence in case number so and so *aforesaid*, and inasmuch as there had been no allusion to any other case in the previous part of the sentence, it was irretrievably vague and uncertain, and held to be void. That would not apply to this case, however, because it refers to a distinct case, giving the title and date of it. In volume 22 of the same reports, there was a case in which the reference was to another case, without indicating the date of it or the court in which it had taken place. The date here is clearly given, and the indication is sufficiently clear that the conviction was in the same court. So that neither of these cases has application to the present one. On the other hand, we have examined the precedents, and we find that sentences like this, and sentences even much more vague than this, have been sustained both in England and in this country. One is the case of the Queen *vs.* Cutbush, 2 Queen's Bench, page 379, where the imprisonment was adjudged by a justice " to commence at the expiration of the first term of three calendar months, an imprisonment to which he has this day been adjudged by us the said justices." That is even more vague than the present case, because it does not give the number of the case. Another case was Kile *vs.* Corum, 11 Metc., where the sentence was to be executed from *and after the expiration of four former sentences*, without indicating where they took place, or what the date was. That was held not to be erroneous, although the judgment was reversed on other grounds. Still another

case is that of Mills *vs.* Cowen, 13 Penn., 631, where a man was indicted for attempting to procure an abortion of a certain female, and the sentence was for an imprisonment, "to be computed from the expiration of the sentence on the indictment for attempting to procure abortion of another female." Nothing could be more vague than that, for it does not state where it took place, the date or the number of the case. The case of the People *vs.* Forbes, in 22 Cal. Reports, 135, is very much like this. There were five separate sentences passed on the defendant on the 6th of September, 1862, by the Recorder's Court of San Francisco, the first for a period of confinement of ninety days, and each of the others was for ninety days: "Said term to commence at the expiration of previous sentences." Now, each one of the sentences under consideration is to commence at the expiration of the previous sentence, the number and date of which is given. It is more definite than in the case just cited.

So that we think the requirement of the law as to certainty is sufficiently gratified by the references contained in the sentences. We cannot think, therefore, that they are void.

One or two of these objections, perhaps, would be more appropriately considered on appeal, and not as justifying the court in discharging the party on habeas corpus. But it is sufficient to say that we do not consider that the record has disclosed any errors, and therefore the prayer of the petition must be refused, and the prisoner must be remanded to the custody where the habeas corpus found him.